UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                              Case No.: 10-49009-BKC-AJC

CABI SMA Tower I, LLLP,                             Chapter 11

    Debtor.
_____/

**MOTION OF SECURED CREDITOR, BRICKELL CENTRAL, LLC,
FOR ENTRY OF AN ORDER (I) GRANTING RELIEF FROM THE
AUTOMATIC STAY OR (II) TERMINATING DEBTOR'S EXCLUSIVITY**

Brickell Central, LLC, ("Brickell") as the holder of more than $30 million of debt (the "First Lien Debt") secured by a first mortgage lien on the real property owned by the Debtor, CABI SMA TOWER I, LLLP (the "Debtor"), (the "Real Property"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order granting Brickell relief from the automatic stay pursuant to section 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), or, in the alternative, terminating the Debtor's exclusivity under section 1121(d) of the Bankruptcy Code. In support of the Motion, Brickell relies upon the declaration of Albert de la Parra, Managing Director of Brickell, attached hereto as Exhibit "A" (the "de la Parra Declaration"), and respectfully represents as follows:

**Preliminary Statement**

The Debtor's bankruptcy filing over six months ago has prevented Brickell and its predecessor, from enforcing its state law rights with respect to the First Lien Debt. It has accomplished little else. No progress has been made (or is foreseeable) towards the formulation of a plan that would be acceptable to Brickell, and any attempt to confirm a plan over Brickell's rejection would be a futile, value-wasting exercise. Meanwhile, Brickell continues to be irreparably harmed by the ongoing decline in the value of its collateral.

The Debtor has admitted that the Real Property is worth substantially less than the amount owed to Brickell and the Debtor cannot generate any income to pay all amounts owed to Brickell over time without seeking additional financing secured by the Real Property. The Debtor has presented a plan that preserves the ownership interests of the Debtor's current principals. In effect, by proposing a plan wherein the Debtor's general partner preserves an ownership interest in the Reorganized Debtor, the Debtor is attempting to use its exclusivity as a sword to force Brickell to accept a plan that wrongfully preserves shareholder interests at the direct expense of its recovery as a creditor. As discussed in detail below, the Supreme Court's holding in *Bank of America National Trust and Savings Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999) (hereinafter "LaSalle") requires that, for the Debtor to comport with the absolute priority rule contained in section 1129(b)(2)(B)(ii) of the Bankruptcy Code, when proposing a "new value" plan, (i) the Debtor's assets must be subject to an auction process, or (ii) the Debtor's exclusive right to file a plan of reorganization must be terminated. Given that the Debtor's Chapter 11 Plan does not subject the Debtor's assets to an auction, the Debtor's exclusivity should be terminated.

Moreover, since this is a single asset real estate case, the Debtor's legal protections with respect to both the automatic stay and requests for the termination of this case are limited, as more fully explained below. Brickell has been severely prejudiced by the Debtor's bankruptcy filing—among other things, the Real Property has been issued Notices of Violation and Notices to Repair or Demolish by the City of Miami which require, among other things, that the Real Property be backfilled, and state that failure to do so may lead to fines from $50.00 to $500.00 per day.

During the pendency of this proceeding, Brickell has not been adequately protected or received anything from the Debtor that did not already comprise its collateral. Accordingly, Brickell has been left with no alternative but to file this Motion.

**Procedural and Factual Background**

1. On December 28, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The Debtor owns vacant land comprising a full city block consisting of various contiguous lots located in downtown Miami, Florida, bounded by South Miami Avenue to the East, SW 14th Street to the South, SW 1st Avenue to the West, and SW 13th Street (Coral Way) to the North (the "Property"), which Property is more specifically described in the public records and is attached to Exhibit "A" of the Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, and Notice of Future Advance, which is attached hereto as Exhibit "B."

2. The Debtor continues in possession of the Real Property and is operating as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The Debtor did not file this proceeding as a single asset real estate case. It was not until Brickell filed its Motion seeking that the proceeding be designated as a single asset real estate case that the Debtor conceded that it was "single asset real estate" as such term is defined in section 101(51B) of the Bankruptcy Code.

5. On March 22, 2011, this Court entered an Order determining that the Debtor is a Single Asset Real Estate entity.

6. HSBC Realty Credit Corporation (USA) ("HSBC") held a first mortgage on the Property in the original principal amount of $32,500,000.00 that was recorded on June 9, 2006, in the Official Records Book 24613, at Pages 2022-2048 in the Public Records of Miami-Dade County, Florida. A true and correct copy of the recorded Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, and Notice of Future Advance is attached hereto as Exhibit "B."

7. The Mortgage was amended by that certain First Modification of A&R Mortgage, Assignment of Leases and Rents and Security Agreement dated November 22, 2008, and recorded on July 1, 2009 in Official Records Book 26924, Page 4489 of the Public Records of Miami-Dade County, Florida. A true and correct copy of the First Modification of A&R Mortgage, Assignment of Leases and Rents and Security Agreement is attached hereto as Exhibit "C." The Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, and Notice of Future Advance together with the First Modification of A&R Mortgage, Assignment of Leases and Rents and Security Agreement and any subsequent amendments, modifications, restatements, renewals and/or extensions thereof are collectively referred to hereinafter as the "Mortgage."

8. The Mortgage secures the repayment of that certain Amended and Restated Promissory Note in the original principal amount of $32,500,000.00 executed by the Debtor on May 26, 2006 as amended, restated and renewed by that certain Amended and Restated Renewal Promissory Note dated November 22, 2008, in the original principal amount of $29,198,303.00. True and correct copies of the Amended and Restated Promissory Note and the Amended and Restated Renewal Promissory Note are attached hereto as Composite Exhibit "D." The Amended and Restated Promissory Note together with the Amended and Restated Renewal

Promissory Note and any subsequent amendments, modifications, restatements, renewals and/or extensions thereof are collectively referred to hereinafter as the "Note."

9.  On February 28, 2011, Brickell, acquired from HSBC all rights and title in the Note, Mortgage and documents related thereto, as such have been amended, modified, restated, renewed and/or extended. A true and correct copy of the Assignment of Notes, Mortgage and other Loan Documents from HSBC to Brickell Central (the "Assignment") is attached hereto as Exhibit "E."

10. Pursuant to the Assignment, Brickell is the owner and holder of the Note, Mortgage and other Loan Documents executed in connection therewith as more particularly described in Exhibit "A" to the Assignment.

11. Brickell's First Lien Debt is secured by a first mortgage lien on the Real Property in the principal amount of $29,198,303.00 plus accrued interest, applicable fees and charges to and through the petition date in an amount in excess of $30.5 million.

12. The First Lien Debt under the Brickell Central Loan Documents matured in November, 2010. As reflected in the Proof of Claim No. 36 filed by Brickell on May 3, 2011, Brickell's post-petition payment address is c/o GrayRobinson, P.A., 1221 Brickell Avenue, Suite 1600, Miami, Florida 33131.

13. Brickell currently holds all rights and interests with respect to the foregoing First Lien Debt, which is secured by first priority liens on the Real Property. Additionally, the Debtor's financial obligations under the First Lien Debt are guaranteed by Elias Cababie Daniel, individually, and as Executor of the Estate of Jacobo Cababie Daniel, Deceased, and Abraham Cababie Daniel, individually (collectively, the "Guarantors").

**The Debtor's Lack of Equity in the Real Property**

14.     The Debtor does not contest that Brickell is owed in excess of $29 million on account of outstanding obligations under the First Lien Debt. The Debtor filed a Chapter 11 Plan which references the value of the Real Property on pages 5 and 19 of the Disclosure Statement at "approximate allowed amount of $16 million" or "approximately $14 million." Notwithstanding the number that is adopted, any valuation adopted by the Debtor that values the Real Property at less than the amount of the First Lien Debt constitutes an admission by the Debtor that it has no equity in the Real Property. Brickell estimates that the value of the Real Property is approximately $18,500,000 based on an appraisal conducted by CBRichard Ellis in February, 2011

**Exclusivity**

15.     On April 21, 2011, the Debtor filed a Disclosure Statement and Plan in order to meet its 30-day deadline under 11 U.S.C. § 362(d)(3)(A). On April 27, 2011, the last day of the Debtor's exclusive period to file a Chapter 11 Plan under 11 U.S.C. §1121(b), the Debtor filed its a Disclosure Statement Relating to a First Amended Plan of Reorganization [Docket No. 103] (herein referred to as the Plan).

16.     Preceding the hearing on approval of the Disclosure Statement, Brickell raised the issue that the Plan violates the absolute priority rule and is, thus, not a confirmable plan.

17.     Thereafter, on June 26, 2011, the Debtor filed its Motion to Extend the Exclusive Period in Which Only the Debtor May File a Chapter 11 Plan and Solicit Votes Thereon [Docket No. 136] (the "Exclusivity Motion"), seeking a 120-day extension of the Exclusive Period for filing a Chapter 11 Plan through and including August 25, 2011 and to solicit acceptances of a plan through and including October 24, 2011.

18. In addition to filing this Motion, Brickell intends to assert its objection to the Debtor's Exclusivity Motion [Docket No. 125] (the "Exclusivity Objection").

**Relief Requested**

19. Brickell respectfully requests that this Court enter an order (i) granting Brickell relief from the automatic stay pursuant to section 362(d)(1), (2) and (3) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to allow Brickell to enforce all of its rights as a secured creditor of the Debtor under the First Lien Debt and related documentation, whether through the filing of a Foreclosure Action or otherwise or, in the alternative, (ii) terminating the Debtor's Exclusive Period for filing a plan of reorganization pursuant to section 1121(d) of the Bankruptcy Code.

**Basis for Relief**

I. **Cause Exists for Lifting the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code to Allow Brickell to Enforce its Rights as a Secured Creditor**

20. There are ample grounds in this case to lift the automatic stay to allow Brickell to enforce all of its rights as a secured creditor of the Debtor under the First Lien Debt, whether through continued prosecution of the Foreclosure Action or otherwise.

21. Bankruptcy Code section 362(a) operates as a stay, applicable to all entities of, among other things, (i) commencement of proceedings to recover prepetition claims against the Debtors, (ii) acts to obtain possession or exercise control over property of the estate, (iii) acts to enforce a lien against property of the estate, and (iv) acts to recover or collect a claim against the Debtors that arose before the commencement of the case. *See, generally*, 11 U.S.C. § 362(a)(1)-(6).

22. Notwithstanding the foregoing, Bankruptcy Code section 362(d) mandates relief from the automatic stay under section 362(a) under the following circumstances:

7

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or condition such stay –

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

   (A) the debtor does not have an equity in such property; and

   (B) such property is not necessary to an effective reorganization;

(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine from cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later —

   (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

   (B) the debtor has commenced monthly payments that

      (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

      (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate . . . .

11 U.S.C. § 362(d) (emphasis added).

23. As set forth above, relief from stay is mandatory when the proper showing is made. The party requesting relief from stay (in this case, Brickell) has the burden of proof on the issue of the Debtor's lack of equity in property and the party opposing the relief requested has the burden of proof on all other issues. *See* 11 U.S.C. § 362(g). In this case, relief from stay is mandatory and the automatic stay should be terminated as to the Real Property to enable Brickell to exercise all of its rights and remedies with respect thereto.

24. Here, Brickell is entitled to relief from the stay (i) for cause as a result of the Debtor's inability to prevent irreparable harm to Brickell's interest in the Real Property; (ii) for lack of adequate protection of its secured claims and interest in the Real Property, (iii) because the Debtor has no equity interest in the Real Property and because such property is not necessary for an effective reorganization, and (iv) because this is a single asset real estate case wherein the Debtor has failed to timely file a plan of reorganization that has the possibility of being confirmed within a reasonable time or to commence monthly payments that satisfy the requirements of section 362(d)(3)(B)(ii) of the Bankruptcy Code.

### A. The Court Should Grant Relief from the Stay for Cause under Section 362(d)(1) of the Bankruptcy Code

25. Brickell is entitled to relief from stay under section 362(d)(1) of the Bankruptcy Code for "cause" because the Debtor is unable to prevent irreparable harm to Brickell's interest in the Real Property and its inability to provide Brickell with adequate protection for its continued diminution of Brickell's interests in its collateral.

26. Brickell submits that its security interests have not and cannot be adequately protected by the Debtor in this case, thus presenting cause for terminating the stay for cause under section 362(d)(1). Specifically, the City of Miami has issued various Notices of Repair or

Demolish dated June 19, 2011 and June 28, 2011, as well as a Notice of Violation dated April 7, 2011, all of which relate to the Real Property, true and correct copies of which are attached as Exhibit "F" hereto and incorporated herein by reference.

27. The fact that the Real Property constitutes an abandoned construction project and excavation work and has expired permits coupled with the failure to obtain permits to backfill in order to cure the stated violations of Chapter 8-5 of the Code of Miami-Dade County puts Brickell's interest in the Real Property at risk. In addition, the Notice of Violation Ref #7688 cites the failure to maintain a building or structure in a safe condition and directs that the failure to cure said violations by May 19, 2011 may result in monetary penalties from $50 to $500 per day for each day the violation remains uncorrected. Most importantly, the Notices state that in assessing violations of Chapter 8-5 of the Code of Miami-Dade County, the Real Property is evaluated to determine whether or not it is unsafe, constitutes a fire hazard, or is otherwise dangerous to human life or public welfare. Thus, to the extent that the City of Miami moves toward the reparation of the property by exercising its rights under Chapter 8-5 of the Code of Miami-Dade County, the Real Property will likely be subject to a lien by the City as a result of any efforts to restore the Real Property to a safe condition as provided for in the Code of Miami-Dade County. The Debtor's continued inaction during the pendency of this case has affirmatively jeopardized Brickell's interests and, in effect, resulted in the exact opposite of adequate protection—accelerating the diminution of value of Brickell's collateral, including by allowing a potential lien by the City of Miami for the costs of restoring the Real Property to compliance with the Code of Miami-Dade County. Thus, for this reason, Brickell respectfully submits that cause exists for lifting the stay under section 362(d)(1).

  B. **Relief from Stay is Also Proper Pursuant to Section 362(d)(2) of the Bankruptcy Code**

28. As discussed above, section 362(d)(2) of the Bankruptcy Code requires relief from the stay where (i) the debtor does not have equity in the property that is the subject of a request for stay relief and (ii) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Here, both prongs of section 362(d)(2) are easily satisfied.

29. As an initial matter, the Debtor has admitted that the amount owed to Brickell on account of the First Lien Debt exceeds the value of the Real Property and, as such, conceded that it does not have any equity in the Real Property. While Brickell disagrees with the Debtor's valuation of the Real Property for purposes of its proposed treatment under the Plan, there is no dispute that the Debtor lacks equity in the Real Property.

30. Similarly, the Debtor has no prospects or ability to satisfy its obligations to Brickell on account of the First Lien Debt and, as such, cannot propose a confirmable plan of reorganization. It is well established that, in order to defeat a motion for stay relief under section 362(d)(2), it is not sufficient that the property be necessary for any possible reorganization. Rather, the property must be "necessary to an effective reorganization" in that there must be a "reasonable possibility of a successful reorganization within a reasonable time," and that the property at issue is necessary to that reorganization. *United States Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis added). *See also In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (finding that stay relief under 362(d)(2) was proper where single asset debtor lacked equity in the property and had no realistic prospect of reorganization).

31. For the Debtor to show that there is a reasonable possibility of a successful reorganization within a reasonable time, the Debtor must prove that confirmation is feasible. *See In re CGE Shattuck, LLC*, 1999 WL 33457789 (Bankr. D. N.H.). In proposing a new value plan,

the Debtor has failed to meet the requirements set forth in *LaSalle* and, thus, proposed a plan that is patently unconfirmable under section 1129(b) of the Bankruptcy Code.

32. Moreover, the Debtor has proposed treatment which violates Brickell's rights under 11 U.S.C. § 1111(b). The Debtor seeks to present a plan which, it argues, renders Brickell's ability to make an §1111(b) election a nullity by bifurcating its claims in the Plan under Class 4 and Class 8. In doing so, the Debtor impermissibly denies the fact that if a secured creditor makes an §1111(b) election, its lien is not stripped down. *In re Griswold Building*, 420 B.R. 666, 695 (Bankr. E. D. Michigan 2009). Contrary to the Debtor's Plan which ignores Brickell's potential right to make an §1111(b) election altogether, if such an election is made, the Plan impermissibly seeks to prime Brickell's lien with proposed "Construction Financing" in excess of $40 million. As stated by the Court in *In re Philadelphia Newspapers*, 418 B.R. 548, 564 (E.D. Penn, 2009):

> [T]he exercise of this 1111(b)(2) election dictates that the undersecured creditor's claim be treated as a **single** claim under a proposed plan which is valued at the total amount of the outstanding claim, as opposed to merely to the value of the collateral.

Id. (emphasis added)

33. As such, the Plan as presented is unconfirmable as it seeks to bifurcate Brickell's claim while allegedly providing it with a subordinated "lien" for what would otherwise be considered an unsecured claim which is contrary to either the provisions of and the policy for allowing secured creditors to make an election under §1111(b) and retain its, First Lien Debt, to the full amount of its debt.

34. In addition to running afoul of the protection of section 1111(b), the proposed modification of Brickell's lien is also improper under section 1129(b)(2)(A)(i) of the Bankruptcy Code, which specifically bars debtors from modifying a secured creditor's lien without consent.

35. As discussed in greater detail above, the Debtor has not and cannot propose a confirmable plan of reorganization in this case.

### C.    Relief From the Stay is Also Proper Pursuant to Section 362(d)(3) of the Bankruptcy Code

36. As set forth above, section 362(d)(3) provides that relief from the stay of actions against "single asset real estate," as defined in section 101 of the Bankruptcy Code, must be granted, unless, within the later of (1) 90 days after the order for relief, (2) such longer period as the court determines during the initial 90-day period, or (3) 30 days after the court determines that the debtor is subject to the single asset real estate provisions, the debtor files a reorganization plan that has a reasonable possibility of being confirmed within a reasonable time, or the debtor has commenced monthly payments equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate. See 11 U.S.C. § 362(d)(3). See also 3 Collier on Bankruptcy ¶ 362.07[5]. Here, the requisite statutory period has expired and the Debtor has failed to either file confirmable plan or make the payments required under section 362(d)(3).

37. The Debtor commenced this chapter 11 case approximately six months ago on December 28, 2011. Yet—notwithstanding the requirements of section 362(d)(3)(A)—the Debtor has filed a plan of reorganization that has no reasonable possibility of being confirmed within a reasonable time. Indeed, the Debtor's latest request for an extension concedes that reorganization is not even possible within the deadlines normally applicable to non-SARE cases.

13

Here, the failure to provide a confirmable plan is only accentuated by the fact that the Debtor has not provided any adequate protection payments during the pendency of this case.

38. The case of *In re Rim Development, LLC*, 448 B.R. 280 (Bankr. Kan 2010) presented similar circumstances where a single asset real estate debtor filed its Chapter 11 petition in January, 2010 and in June, 2010, the court held that the Debtor's amended plan was patently unconfirmable. In *Rim*, the Debtor's plan also failed to meet the requirements under 11 U.S.C. § 1129(b)(2)(A)(i) by failing the propose that the Debtor retain its lien and also included a retention of the current interest holder's interest in the reorganized debtor without competition or market valuation as required under §1129(b)(2)(B)(ii). The *Rim* court allowed the Debtor a six month period to propose an otherwise confirmable plan. Upon the Debtor's failure to do so, the Court granted the secured creditor relief from the automatic stay to proceed with its contractual rights through completion of any foreclosure or other collection proceeding.

39. Taken together, the foregoing make it plain that the Debtor has neither (i) met the requirement of filing a plan which has a reasonable possibility of being confirmed within a reasonable time, nor (ii) compensated Brickell appropriately while it continues to languish in chapter 11.

40. For this additional reason, Brickell respectfully submits that cause exists for lifting the stay under section 362(d)(3) of the Bankruptcy Code and asks that such relief be granted.

II. **Termination of Exclusivity**

41. As a threshold matter, the Debtor has failed to file a timely motion to extend its exclusive right to file a plan in this case and, as such, currently has exclusivity only for purposes

of soliciting its Plan. Brickell respectfully submits that it should be immediately authorized to file a competing plan in this case for the reasons set forth below.

42. Bankruptcy courts have the discretion to terminate or reduce a debtor's exclusivity upon a motion by a party in interest pursuant to section 1121(d). 11 U.S.C. § 1121(d) ("the court may for cause reduce or increase the 120-day period or the 180-day period") (emphasis added). Although bankruptcy courts have the authority to increase or decrease the debtor's exclusivity for "cause," the Bankruptcy Code does not define what constitutes "cause." See, e.g., *In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (the term "cause" is undefined by the statute). To determine whether "cause" exists pursuant to 1121(d), however, courts generally rely on a non-exclusive list of factors, including whether the debtor has demonstrated reasonable prospects for filing a viable plan. *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bank". E.D. Mich. 1997).

43. Importantly, "the primary consideration . . . in determining whether to terminate the debtor's exclusivity is whether its termination will move the case forward, and this 'is a practical call that can override a mere toting up of the factors." Adelphia Commc'ns Corp., 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006) (quoting Dow Corning, 208 B.R. at 670). In other words, "the test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case." Id.

44. As will be set forth in further detail in the Exclusivity Objection, and incorporated herein by reference, cause exists to terminate the Debtor's exclusivity:

- the Debtor's chapter 11 case is not large and is far from complex;

- this is a single asset real estate case that is subject to limited stay protection under the Bankruptcy Code; and

- there is no indication that the Debtor needs more time to negotiate a plan, has made good faith progress toward reorganization or in

negotiations with Brickell, or has any reasonable prospects for filing a viable plan.

45. Moreover, termination of exclusivity is mandated here by the Supreme Court's holding in *LaSalle*. The Debtor is using its exclusive right to control the plan process to try to force Brickell to accept a plan under which Brickell will not be paid in full and the Debtor's owners will retain their ownership and control by making a new investment in the Debtor through the Reorganized Debtor. For such a plan to proceed, LaSalle requires either that a bidding process be established for the Debtor's equity or the Court must terminate the Debtor's exclusivity.

46. In *LaSalle*, the Supreme Court rejected the argument that old equity could exercise exclusive control over the decision to sell the assets of the debtor's estate as part of a chapter 11 plan — to the exclusion of any other party and over the objection of a senior impaired class of creditors — without allowing the proposed plan to be subject to alternative transactions or competing plans. *See Id.* at 454-58. Notwithstanding the fact that old equity proposed to provide additional postpetition value to the debtor's estate, the Supreme Court found that the chapter 11 plan in LaSalle violated the absolute priority rule of section 1129(b) of the Bankruptcy Code because old equity retained property on account of its prepetition interests in the debtor, i.e., the exclusive right to propose the chapter 11 plan in the bankruptcy case. *Id.* at 456 (old equity impermissibly retained "a property interest extended 'on account of' the old equity position" by virtue of its "exclusiveness of the opportunity [to propose a chapter 11 plan], with its protection against the market's scrutiny of the purchase price by means of competing bids or even competing plan proposals.").

47. Specifically, the Supreme Court found that the exclusive opportunity to control disposition of the estate's assets constituted a property right that was being exercised in violation

16

of the absolute priority rule. *Id.* at 455 (the exclusive opportunity to retain equity in the reorganized debtor is "an item of property in its own right"). Expressing its concern that old equity, acting as the debtor in possession, could use its exclusive right to file a chapter 11 plan to retain part or all of its interest in the debtor without market-testing the proposed purchase price, the Supreme Court held:

> Given that the opportunity is property of some value, the question arises why old equity alone should obtain it, not to mention at no cost whatever…<u>If the price to be paid for the equity interest is the best obtainable, old equity does not need the protection of exclusiveness</u> (unless to trump an equal offer from someone else); if it is not the best, there is no apparent reason for giving old equity a bargain. There is no reason, that is, unless the very purpose of the whole transaction is, at least in part, to do old equity a favor. . . Hence, <u>it is that the exclusiveness of the opportunity</u>, with its protection against the market's scrutiny of the purchase price by means of competing bids or even competing plan proposals, <u>renders the partners' right a property interest extended 'on account of' the old equity position and therefore subject to an unpaid senior creditor class's objection.</u>

*Id.* at 456 (emphasis added) (citations omitted).

48.    Adding to this reasoning, the Supreme Court stressed that "plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii)." Id. at 458; see also *In re SM 104 Ltd.*, 160 B.R. 202, 225 (Bankr. S.D. Fla. 1993) (suggesting that exclusivity should be terminated where the bidding process has been initiated by the filing of a plan calling for a new value contribution, and observing that competing plans provide a better method for valuation of the reorganized equity interests when new value plans are proposed because the Bankruptcy Code's disclosure requirements generate informed, competing bids for the new equity); *Davis v. Davis (In re Davis)*, 262 B.R. 791, 798-99 (Bankr. D. Ariz. 2001) (declining to extend debtor's exclusive period "because the Plan currently set for confirmation is not confirmable" as "it fails

to use a 'market' or 'non-exclusive' approach to the source of new value" as required by LaSalle and finding that "to be meaningful, the termination of exclusivity must be accompanied by a period within which [a creditor] has the opportunity to decide how to proceed"); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31,49 (Bankr. D. Del. 2000) (holding that "[t]o avoid [violating LaSalle] the Debtors must subject the 'exclusive opportunity' to determine who will own Global Ocean to the market place test. This can be achieved by either terminating exclusivity and allowing others to file a competing plan or allowing others to bid for the equity (or the right to designate who will own the equity) in the context of the Debtors' Plan."); *In re Situation Mgmt. Sys. Inc.*, 252 B.R. 859, 864-65 (Bankr. D. Mass. 2000) (concluding "[c]ommentators agree that filing a new value plan is sufficient cause to terminate [exclusivity]" and that "[t]ennination of exclusivity can . . . provide a potent check on owners' latitude . . .").

49.  Like the debtor in *LaSalle*, the Debtor here intends to submit a plan that will provide the Debtor's shareholders with the exclusive opportunity to retain control of the Real Property without testing the adequacy of the consideration being offered. Such plan violates the absolute priority rule as a matter of law. These deficiencies can, however, be remedied one of two ways: (1) subjecting the Debtor's equity interests to a market valuation by way of auction or (ii) terminating exclusivity and allowing for a competing plan. Accordingly, under the controlling Supreme Court authority of LaSalle, the Debtor's exclusivity must be terminated.

50.  The Debtor seeks to promote a restructuring where Brickell's recoveries would be limited by the Debtor's ability to obtain speculative financing secured by a lien on the Real Property which lien is to come ahead of Brickell's lien in an amount in excess of $40 million. The Debtor seeks to accomplish that feat without complying with 11 U.S.C. § 364 and denying Brickell's right to exercise an election under 11 U.S.C. §1111(b).

51. Stated simply, the Debtor is not capable of presenting a confirmable plan of reorganization to this Court.

WHEREFORE, Brickell Central, LLC respectfully requests that this Court enter an order granting Brickell Central, LLC relief from the automatic stay pursuant to section 362(d)(1), (2) and (3) of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014 to allow Brickell Central, LLC to enforce all of its rights as a secured creditor of the Debtor under the First Lien Debt and related documentation, whether through continued prosecution of the Foreclosure Action or otherwise, or in the alternative, (i) terminating the Debtor's Exclusive Period for filing a plan of reorganization pursuant to section 1121(d) of the Bankruptcy Code, and granting such other and further relief as the Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served on this 29th day of June, 2011 upon all interested parties registered to receive notification via this Court's CM/ECF notification system.

Date: June 29, 2011

Respectfully submitted
GRAYROBINSON, P.A.
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
Leyza.Blanco@gray-robinson.com
Telephone:    (305) 416-6880
Facsimile:     (305) 416-6887

By:   /s/ Leyza F. Blanco
       Leyza F. Blanco
       Florida Bar No.: 104639

# 492069 v1